UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS L. HARRISON, | No. C 09-4665 SI (pr) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| D.E. MILLIGAN, et al., | Doc. ## 71, 82, 85, 89 |
| Defendants. | |

## INTRODUCTION

Marcus L. Harrison, an inmate at Pelican Bay State Prison ("PBSP"), filed a pro se civil rights action under 42 U.S.C. § 1983, asserting a First Amendment claim regarding the confiscation of certain outgoing and incoming mail. Defendants moved for summary judgment and Harrison opposed the motion. The Court denied in part and granted in part the motion for summary judgment and referred the parties for settlement proceedings. The case did not settle. Now pending is defendants' second motion for summary judgment. Harrison has opposed the motion and defendants have filed a reply. For the reasons discussed below, defendants' second motion for summary judgment (Doc. #71) is GRANTED.

## BACKGROUND

In the order addressing defendants' first motion for summary judgment, the Court summarized the background of this case as follows:

Harrison alleged in his complaint that PBSP officials violated his First Amendment rights

by wrongfully confiscating his incoming and outgoing mail. Defendants contend that the confiscations were permissible because the materials illegally promoted gang activity. Defendants also contend that some of the mails violated prison prohibitions on inmate-to-inmate correspondence and revenue generation. Harrison denies that his mail violated any prison regulations. He claims that his mail "was only promoting education, political, social, and cultural awareness from the viewpoints of the New Afrikan." Doc. #15 at 4. Defendants also claim that they are entitled to qualified immunity.

The following facts are undisputed unless otherwise noted.

Harrison has been validated as a member of the Black Guerilla Family prison gang ("BGF"). As a result of his validation, he is housed in the security housing unit ("SHU") at Pelican Bay. One of the reasons gang members are housed in the SHU is to monitor and intercept their illegal communications. Doc. #6, Exh. A at 86.

A. The Black Guerilla Family and George Jackson

The BGF is a recognized prison gang. George Jackson is not a BGF member. However, the BGF has incorporated George Jackson's ideologies into their beliefs. Id. at 45. The BGF has adopted the Black Panthers, George Jackson and other revolutionary figures for their own use. Id. at 31. In order to promote BGF ideologies, BGF members circulate pamphlets which discuss the Black Panthers and encourage revolution by people of African descent to liberate themselves from an oppressive government. Id.

BGF members refer to themselves as "New Afrikans." Id. at 83. The reference to African Americans as "New Afrikans" is not a title accepted in mainstream society. Id. This title is derived from the Republic of New Afrika, a 1968 revolutionary organization which sought the establishment of an independent black-majority nation in the Southern United States (excluding Florida). This group had violent confrontations with law enforcement as it attempted to accomplish its goals. Id. at 83. The New Afrikan Revolutionary Nationalist ("NARN") organization also derives from the Republic of New Afrika. The California Department of Corrections ("CDCR") has determined that the NARN organization is a disguise for the activities of the BGF. Id. at 68. In a pamphlet published by the New Afrikan Peoples Organization, the New Afrikan Liberation struggle is described as "the struggle of Black prisoners, 'behind the walls' of U.S. penal institutions, to gain liberation for ourselves, our people, and all oppressed people." Doc. #15, Exh. B.

Harrison claims that the title "New Afrikan" is used by "all black people, as it is a part of the historical materialism and culture of all people, and not solely used by the BGF." Doc. #6, Exh. A at 77. Harrison further argues that NARN is simply an ideology and not a BGF reference. Id. at 61.

B. Regulations Related to Prison Gangs and Inmate Mail

The California Code of Regulations defines a "gang" as any group whose members engage in unlawful acts or acts of misconduct. 15 Cal. Code Regs. § 3000. "Prison gang" is defined as any gang with its roots or origins within the CDCR or any other prison system. Id. Prison gangs "present a serious threat to the safety and security of California prisons." Id. at § 3023(b). "Inmates . . . shall not knowingly promote, further or assist any gang . . ." Id. at § 3023(a).

The regulations prohibit mailing gang-related materials and other contraband. Id. at §§ 3006, 3136. Any material reasonably deemed to be a threat to a legitimate penological interest is classified as contraband. Id. at § 3006(c)(16). If prison staff determine that an

2

inmate's incoming or outgoing mail has any of the characteristics of contraband, as listed in Section 3006(c), the regulations require that prison staff confiscate the suspect mail. Id. at § 3136(a). In addition, prison regulations prohibit inmate-to-inmate correspondence, id. at § 3139(1), and inmate mail which directs revenue-generating activity. Id. at § 3024(b).

Doc. #20 at 1:23-3:18.

## VENUE AND JURISDICTION

Venue is proper in the Northern District of California because the events or omissions giving rise to the claims occurred at Pelican Bay State Prison in Del Norte County, which is located within the Northern District. See 28 U.S.C. §§ 84, 1391(b). This court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, when a party challenges the merits of the opponent's claim, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"

3

Celotex, 477 U.S. at 324 (citations omitted).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). The complaint was made under penalty of perjury and therefore is considered as evidence.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. Id. at 631.

## DISCUSSION

A.  Defendants' First Motion for Summary Judgment

In his complaint, Harrison alleged that defendants violated his First Amendment rights by unlawfully confiscating four pieces of outgoing mail and six pieces of incoming mail.

In the order addressing defendants' first motion for summary judgment, the Court granted summary judgment to defendants with respect to all of Harrison's claims concerning his outgoing mail. Specifically, the Court applied the test for such claims that was established in Procunier v. Martinez, 416 U.S. 396 (1974),[1] and found that: "Prison officials have demonstrated a tight fit between each piece of confiscated outgoing mail and prison security, and that the limitation is no greater than necessary to ensure prison security." Doc. #20 at 21:11-13.

Additionally, the Court granted summary judgment to defendants regarding one piece of

---

[1] Under Procunier, a limitation on outgoing mail is justified only if the limitation in question (1) "furthers an important governmental interest unrelated to the suppression of expression," and (2) is "no greater than necessary or essential" to protect the governmental interest involved. Id. at 413.

4

incoming mail that was confiscated on November 26, 2007 but subsequently was given to Harrison, and two pieces of incoming mail that were confiscated on March 19, 2008. With respect to the latter, the Court found that the prison regulation requiring confiscation of gang-related mail is reasonably related to prison security and was reasonably applied to the two pieces of mail, which contained articles that prison officials found were gang-related. Id. at 11:6-16.

The Court denied summary judgment to defendants with respect to the confiscation of Harrison's incoming mail on April 9, 2008, and July 14, 2008. The pending motion for summary judgment addresses these claims.

B.  Legal Standard for Review of First Amendment Claims Concerning Receipt of Mail

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Pell v. Procunier, 417 U.S. 817, 822 (1974) (citing Price v. Johnston, 334 U.S. 266, 285 (1948)). Prisoners retain those First Amendment rights not inconsistent with their status as prison inmates or with legitimate penological objectives of the corrections system. Id.

A regulation or practice limiting prisoners' receipt of mail is valid if it is reasonably related to legitimate penological interests. Thornburgh v. Abbott, 490 U.S. 401, 413 (1989) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)); see also Crofton v. Roe, 170 F.3d 957, 959 (9th Cir. 1999). Four factors are to be considered when determining the reasonableness of a prison rule: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the right that remain open to prison inmates," (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally," and (4) the "absence of ready alternatives", or, in other words, whether the rule at issue is an "exaggerated response to prison concerns." Turner, 482 U.S. at 89-90.

Prison officials are not required to show with certainty that any particular correspondence

5

would have adverse consequences because prison administrators are given some latitude in anticipating the probable consequences of allowing a certain speech in and out of a prison environment. Procunier v. Martinez, 416 U.S. 396, 412 (1974), overruled on other grounds by Thornburgh, 490 U.S. at 413-14. Courts owe "substantial deference to the professional judgment of prison administrators." Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

C.  Harrison's Claims

   1.  April 9, 2008 Mail

       a.  Background

On April 9, 2008, Harrison's incoming mail from "Books Through Bars" was confiscated by Officer Milligan of the PBSP Institutional Gang Investigation ("IGI") unit and Captain Brandon because it allegedly promoted gang activity by discussing George Jackson literature. Doc. #1, Exh. A at 43. The mailing described how to obtain George Jackson literature. Id. at 45.

Harrison appealed the confiscation, arguing that the mere discussion of George Jackson did not constitute promoting BGF activity. Id. at 36, 38-39. Harrison's appeal went directly to a second level review by Warden Horel. Horel denied Harrison's request to receive the confiscated mailing, explaining that: "This mailing is being held in IGI pending further investigation into the BGF gang activity as it tells the reader where they can obtain George Jackson books, which constitutes promoting gang activity." Id. at 45. Harrison appealed again and received a director level review. The director denied his appeal, finding that the mail promoted gang activity and noting that the CDCR has deemed writings from George Jackson as gang-related in accordance with the Office of Correctional Safety. Id. at 47.

In the order addressing defendants' first motion for summary judgment, the Court found the record unclear with respect to Harrison's claim that the confiscation violated his First Amendment right to receive mail because no copy of the letter had been included in the motion for summary judgment. Specifically, the Court ruled as follows:

According to the record, the mail stopped on April 9, 2008 describes how to obtain

George Jackson literature. The prison officials claim the confiscation is necessary because "[e]ven though George Jackson was never a BGF gang member, the BGF gang has patterned their gang's beliefs to incorporate George Jackson's ideology and beliefs and therefore, offering to inform the reader of where to obtain these books falls under promoting gang activity." Doc. #1, Exh. A at 45.

It appears that this mail promotes gang activity only because George Jackson is mentioned; there is no indication that the mail discusses George Jackson's ideology and beliefs. By contrast with the mail stopped on March 19, 2008, in which validated gang members invoked George Jackson in an inflammatory context, this mail apparently only describes how to obtain literature concerning George Jackson.

If the regulation prohibiting gang-related mail is expanded to justify confiscation of any mail which simply mentions George Jackson, it is no longer clear that it satisfies the "common sense" Turner test. The defendants have failed to demonstrate the absence of a genuine issue of material fact as to whether this piece of mail promotes gang activity. Celotex, 477 U.S. at 323. Nor have defendants presented sufficient evidence indicating that prison security requires confiscating mail that has any mention of George Jackson.

Doc. #20 at 11:17-12:9.

In support of the present motion for summary judgment, defendants have filed under seal copies of the following documents, which are attached as Exhibit A to the Declaration of Officer Milligan: (1) the incoming mail from Books Through Bars that includes Harrison's letter in which he identifies himself as "Tashiri, to whom [sic] is a New Afrikan Black political prisoner of war" and instructions on how to obtain copies of his pamphlets "George Jackson Lives" numbers 1-4 and "New Afrikan Physical Fitness 101," by contacting Anthony Rayson, who runs a publishing company, S. Chicago ABC Zine, (2) the enclosed pamphlet written by Harrison entitled "Behind Door Number One," (3) Officer Milligan's notes describing for review the reasons for stopping the incoming mail, and (4) the Stopped Mail Notification provided to Harrison.

b. Analysis

Prison staff are not permitted to allow "inmate[s] to send or receive mail which, in their judgment, has any of the characteristics listed in [California Code of Regulations, Title 15,] section 3006(c)", including materials reasonably deemed to be a threat to legitimate penological order. Cal. Code Regs., Title 15, § 3136. The April 9, 2008 incoming mail was confiscated because it was found to promote gang activity in violation of Section 3136. According to prison officials, such restriction is necessary to ensure prison security. Prison security is a legitimate

7

and neutral penological interest. <u>Stefanow v. McFadden</u>, 103 F.3d 1466, 1472 (1996) (recognizing prison security as a legitimate and "compelling" penological interest and upholding content-based confiscation of book advocating racism and violence); <u>see also</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994). Prison gangs in particular are a threat to inmate and staff safety, as well as to prison order. <u>See, e.g.</u>, <u>Wilkinson v. Austin</u>, 545 U.S. 209, 227 (2005); <u>Westefer v. Snyder</u>, 422 F.3d 570, 575 (7th Cir. 2005).

Prison officials maintain the above mail was properly confiscated because it not only mentions George Jackson but also explains how George Jackson-related literature that was written by Harrison can be obtained. As noted, prison officials find such information promotes gang activity because, "[e]ven though George Jackson was never a BGF gang member, the BGF gang has patterned their gang's beliefs to incorporate George Jackson's ideology and beliefs and therefore, offering to inform the reader of where to obtain these books falls under promoting gang activity." Doc. #1, Exh. A at 45.

Additionally, prison officials have determined that Anthony Rayson, identified by Harrison in the confiscated letter as the person from whom copies of Harrison's pamphlets "George Jackson Lives" numbers 1-4 and "New Afrikan Physical Fitness 101" can be obtained, runs a publishing company that has previously published gang-related materials for BGF members housed at PBSP-SHU, and that such activity is consistent with the BGF's method of operation, specifically, relying on the work of people in the community to type, display and distribute the material under the direction and control of BGF members. Doc. #14, Exh. B to Stocker Decl. Further, the mail contains a copy of Harrison's article "Behind Door Number One," in which he describes himself as a "New Afrikan Revolutionary Freedom Fighter" who embraces "the ideology of New Afrikan Revolutionary Nationalism." Doc. #71, Exh. A to Stocker Decl. (filed under seal). Prison officials have determined that references to the New Afrikan Revolutionary Nationalism (NARN) is an attempt to disguise the activities of the BGF. Doc. #1, Exh. A at 68-69.

The Court has reviewed the referenced mail and defendants' evidence regarding the relationship between the BGF, George Jackson-related materials and Anthony Rayson's

1 publishing company. Given this context, the prison regulation requiring confiscation of gang-
2 related mail, Cal. Code Regs., Title 15, § 3136(a), is reasonably related to prison security, and
3 was reasonably applied to the mail that prison officials confiscated on April 9, 2008.
4 Accordingly, the first Turner factor has been met. See Turner, 482 U.S. at 89; see also Wilson
5 v. Panizza, No. C 10-01627 JW (PR) at 7 (N.D. Cal. Aug. 2, 2011) (finding prison policy
6 prohibiting prisoner from receiving book about Black Panther Party, which was founded by
7 George Jackson, served to suppress BGF indoctrination materials and was reasonably related to
8 prison security and order), aff'd, No. 11-17045 (9th Cir. Nov. 20, 2012) (unpublished).

9 The second Turner factor is satisfied where "there are alternative means of exercising the
10 [constitutional] right that remain open to prison inmates." Turner, 482 U.S. at 89-90. The Court
11 previously found that Harrison's goal is to exercise his First Amendment rights to express his
12 political beliefs, and that there is no indication that he has been prohibited from all political
13 speech. Instead, "[h]is political speech has been limited only insofar as prison officials
14 determine that, in their professional judgment, his speech promotes gang activity." Doc. #20 at
15 13:21-23. Harrison has not presented evidence that calls this finding into question.
16 Accordingly, the second Turner factor has been met. See Wilson, No. C 10-01627 at 8 (finding
17 confiscation of book about Black Panther Party did not deprive prisoner of alternative means of
18 learning about African American history).

19 As to the third Turner factor, the Court previously found that if prison authorities were
20 to "accommodat[e] . . . the asserted constitutional right," the resulting "impact" would be
21 negative because the BGF could share its ideology to recruit new members or further
22 indoctrinate existing members, thereby endangering the safety and security of inmates and staff.
23 Turner, 482 U.S. at 9. Again, Harrison has not presented evidence that calls this finding into
24 question. Accordingly, the third Turner factor has been met. See Wilson, No. C 10-01627 at
25 8 (finding prisoner's possession of book about Black Panther Party would have negative impact
26 because BGF could recruit new members and further indoctrinate existing members, and
27 prisoner would be at risk of assault from BGF enemies).

28 Finally, as the Court previously found, Harrison has not met his burden to show that there

9

is a ready alternative to the confiscation that "fully accommodates the prisoner's rights at de minimis cost to valid penological interests." Turner, 482 U.S. at 91 (citations omitted); see Wilson, No. C 10-01627 at 8-9 (finding in favor of prison officials on fourth Turner factor because prisoner did not put forth ready alternative that would be a de minimis cost to prison security and internal order and discipline).

Based on the above, the Court finds that defendants have met their burden under the Turner test by showing that the confiscation of Harrison's April 9, 2008 mail pursuant to the regulation prohibiting mail promoting gang activity was reasonably related to a legitimate correctional goal. Accordingly, summary judgment is GRANTED in favor of defendants on this claim.

2. July 14, 2008 Mail from Hannah Bastienne

a. Background

On July 14, 2008, two pieces of Harrison's incoming mail were confiscated by Officer Milligan and Captain Brandon because they allegedly promoted gang activity. Doc. #1, Exh. A at 51-52.

The first piece of mail had a return address of Hannah Bastienne, 1728 Berkeley Way #4, Berkeley CA 94703. According to prison officials, the mail was gang-related because it discussed a BGF fund-raising event. Id. at 51, 53. In their first motion for summary judgment, defendants also claimed the Bastienne letter constituted inmate participation in unauthorized revenue generating activity because it was a fundraiser. In opposition, Harrison argued that the event was a fundraiser for NARN - a non-profit organization - and was not BGF-related. Doc. #15 at 10. He also submitted an affidavit from Bastienne, in which she stated that the letter discussed a community event organized to generate support for Harrison's September 2008 parole hearing and to raise money to pay for Harrison's yearly care package. Id. at Exh. D.

The Court ruled as follows with respect to defendants' argument that the letter promoted gang activity:

The letter itself is not in the record, and the discussions of it contain conflicting

10

> descriptions. Harrison describes the event as a "community fundraiser" which has the "sole purpose . . .[of raising] funds for the New Afrikan Community Response Network, in particular, as it pertains to their community based political work." Doc. #15 at 10. However, he also provides an affidavit from Bastienne wherein she states that the purpose of the community event was to raise awareness about Harrison's upcoming parole hearing and to raise funds to pay for Harrison's yearly care package. Id. at Exh. D. If Bastienne's letter discussed a NARN fundraiser, the Court must defer to prison officials' professional judgment about the relationship between the New Afrikan Community Response Network and the BGF. Beard [v. Banks], 548 U.S. at 526.
>
> However, if the event was merely to raise awareness about Harrison's parole hearing and raise funds for a yearly care package, defendants have failed to provide sufficient evidence to link the event to prison security or gang activity. Since all justifiable inferences must be drawn in the prisoner's favor with respect to matters of disputed fact, id., the Court finds that a factual dispute remains as to whether Bastienne's letter promotes gang activity.

Doc. #20 at 12:7-13:3.

Similarly, with respect to defendants' argument that the letter directs illegal revenue generating activity, the Court found:

> Harrison does not challenge the reasonableness of the prohibition against mail that directs revenue generating activity. Cal. Code Regs., Title 15, Section 3024(b). He acknowledges that the event referenced in the Bastienne letter is a fundraiser, but argues that contributions to NARN, a non-profit, do not constitute revenue generation. Section 3024 is titled "Business Dealings by Inmates." Section 3024(a) defines a business as "any revenue generating or profit making activity." Id. at § 3024(a). The regulation does not distinguish between whether the revenue serves a for-profit or non-profit purpose.
>
> The Court would defer to prison officials' judgment that NARN is a BGF-related entity, and that therefore any contributions to NARN constitute revenue. See, e.g., Overton, 539 U.S. at 132. However, the record is unclear as to the nature of the event discussed in Bastienne's letter. Although Harrison states that the event is a NARN fundraiser, Bastienne claims that the fundraiser was intended to raise funds to purchase Harrison's annual care package. Viewing the facts in the light most favorable to Harrison, the Court finds that there is a question of fact as to whether the Bastienne letter directs revenue gathering. See, e.g., T.W. Elec. Serv., 809 F.2d at 630.

Id. at 15:11-25.

In the present motion for summary judgment, defendants have filed under seal copies of the following documents, which are attached as Exhibit B to the Declaration of Officer Milligan: (1) the letter from Bastienne, (2) Officer Milligan's notes describing for review the reasons for stopping the incoming mail, and (3) the Stopped Mail Notification provided to Harrison.

      b.     Analysis

The Court has reviewed the referenced letter from Bastienne and Officer Milligan's reasons for confiscating it. Based on such evidence, the Court finds that the letter contains

11

information from which prison officials reasonably could conclude, based on their professional judgment about the relationship between NARN and BGF and Harrison's connections to those entities, that allowing Harrison to receive the letter would promote gang activity. The Court must accord deference to prison authorities in disputed matters of professional judgment. Beard v. Banks, 548 U.S. 521, 529 (2006). Accordingly, for the reasons discussed above with respect to the confiscation of Harrison's mail on April 9, 2008, the Court concludes that defendants have met their burden under the Turner test of showing that their confiscation of the letter from Bastienne pursuant to the regulation prohibiting mail promoting gang activity was reasonably related to a legitimate correctional goal.

The letter also contains information that prison officials reasonably could conclude violates the prohibition against business dealings by inmates. California Code of Regulations, Title 15, Section 3024 (a) provides that: "Inmates shall not engage actively in a business or profession except as authorized by the institution head or as provided in Section 3104. For the purpose of this section, a business is defined as any revenue generating or profit making activity." Id. § 3024(a). Additionally, subdivision (b) provides that: "Inmate mail may be rejected by an institution head or designee for reasons which include, but are not limited to, the mail relates to the direction of an inmate's business or profession." Id. § 3024(b).

Harrison does not challenge the reasonableness of the prohibition against mail that directs revenue generating activity or the characterization of the event referenced in the letter as a fundraiser. Rather, he argues that there were two purposes to the fundraiser - to raise funds for NARN volunteers and to purchase a care package for him - and that neither purpose constitutes revenue generation or profit making activity.

In defining prohibited business activities, the regulation does not distinguish between revenues raised for profit or non-profit purposes or require that the generated revenue must directly benefit the inmate. Instead, it prohibits the engagement of inmates in "any revenue generating or profit making activity." Id. § 3024(a). The letter from Bastienne contains specific information about how she intended to raise money at the fundraiser. Based on this information, prison officials reasonably could conclude that, regardless of whether the funds were raised for

12

1 NARN or to purchase a care package for Harrison, the manner of fund-raising intended by Bastienne would engage Harrison in "revenue generating or profit making activity," in violation of the prohibition against business dealings by inmates.

Accordingly, summary judgment is GRANTED in favor of defendants on Harrison's claim concerning the confiscation of the letter from Bastienne.

### 3. July 14, 2008 Mail from Neilson Gonzalez

The second piece of incoming mail confiscated on July 14, 2008, had a return address of Neilson Gonzalez, 1240 Walton Ave. #314, Bronx NY 10452. Prison officials stated that the letter violated the prohibition on unauthorized inmate-to-inmate correspondence from another institution, Cal. Code Regs., Title 15, § 3139, and also contained information that promotes gang activity. Doc. #6, Exh. A at 52.

Defendants did not provide a copy of the letter in support of their first motion for summary judgment. Consequently, the Court found a factual dispute existed as to whether the letter did indeed originate from another penal institution and promote gang activity. In support of the present motion for summary judgment, defendants have filed under seal copies of the following documents, which are attached as Exhibit C to the Declaration of Officer Milligan: (1) the envelope from Neilson Gonzalez that shows his return address in Bronx, New York, (2) the letter from Neilson Gonzalez that shows he has addresses in both Bronx, New York and at a penal institution, and (3) the Stopped Mail Notification that was provided to Harrison.

In opposition to the present motion for summary judgment, Harrison does not challenge the reasonableness of the prohibition on inmate-to-inmate correspondence or address the Gonzalez letter at all. The Court has reviewed the letter and Officer Milligan's reasons for confiscating it. The contents of the letter make clear that the letter was sent to Harrison from Neilson Gonzalez, who is incarcerated at another penal institution. Accordingly, summary judgment is granted in favor of defendants on this claim.

//
//

C.  Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Court must consider the following two questions: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" and (2) whether the right was clearly established. . . . 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201-02 (2001) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)); Pearson v. Callahan, 555 U.S. 223, 235 (2009) (overruling the sequence of the Saucier two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by Saucier).

Prison officials' confiscation of Harrison's incoming mail on April 9, 2008 and July 14, 2008, did not violate Harrison's First Amendment rights. Therefore, the Court need not consider whether the right was clearly established. Accordingly, defendants are entitled to judgment as a matter of law on the qualified immunity defense with respect to these pieces of incoming mail.

D.  Motion for Reconsideration

After the Court denied in part and granted in part defendants' first motion for summary judgment, Harrison moved, pursuant to Federal Rule of Civil Procedure 54(b), for reconsideration of the Court's ruling. On May 21, 2012, the Court denied the motion in a reasoned order. Doc. #49. Subsequently, Harrison moved for reconsideration of the Court's order denying reconsideration. The Court denied this motion on June 15, 2012. Doc. #57. Harrison now moves a third time for reconsideration of the Court's order denying in part and granting in part defendants' first motion for summary judgment. Harrison has presented no new

14

1 evidence or other grounds that warrant reconsideration of the Court's prior rulings. Accordingly, the motion for reconsideration is DENIED.

E. <u>Request for Judicial Notice</u>

Harrison has submitted two requests for judicial notice. The first request asks the Court to take judicial notice of an absence of evidence to support defendants' motion for summary judgment with respect to confiscation of the letter sent to Harrison from Bastienne. Such argument, which has been raised in Harrison's opposition to the motion for summary judgment and considered by the Court, is not a proper subject for judicial notice. Accordingly, this request is DENIED.

Harrison's second request for judicial notices asks the Court to take notice of an order issued by Judge Seeborg of this district, finding that a reference to George Jackson and New Afrika in an inmate's confiscated mail "does not threaten security and is not BGF-related." Doc. #89. Harrison does not provide a copy of the order but does provide the case number. The Court has obtained and reviewed the order and GRANTS Harrison's request for judicial notice thereof. See <u>Harvey v. Drown</u>, No. C 10-4891 RS (PR) (N.D. Cal. Mar. 22, 2012).

Contrary to Harrison's summary of the ruling in that case, Judge Seeborg did not find, as a matter of law, that the references made to George Jackson and New Afrika do not threaten institutional security and are not BGF related. Instead, Judge Seeborg found that a question of fact existed as to whether, under the particular circumstances at issue in that case, prison officials reasonably determined that the pieces of outgoing mail were a threat to institutional security. Ultimately, the case settled and the factual disputes were not resolved on the record.

Further, the order is inapposite to the present case for two reasons. First, as noted, it pertains to references made by a PBSP inmate in pieces of <u>outgoing</u> mail. The current motion for summary judgment in this case concerns only <u>incoming</u> mail, to which a different standard of review applies. Specifically, with respect to incoming mail, a regulation or practice limiting prisoners' receipt of mail is valid only if it is reasonably related to legitimate penological interests. <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413 (1989). However, in the case of outgoing

15

mail, which "[does] not, by its very nature, pose a serious threat to prison order and security," id. at 411 ,a limitation is justified only if (1) "furthers an important governmental interest unrelated to the suppression of expression," and (2) is "no greater than necessary or essential" to protect the governmental interest involved. Procunier v. Martinez, 416 U.S. 396, 413 (1974).

Second, in the order addressing defendants' first motion for summary judgment, the Court found that the evidence presented by defendants satisfied the Procunier standard with respect to each piece of Harrison's outgoing mail that had been confiscated:

> Prison officials have demonstrated a tight fit between each piece of confiscated outgoing mail and prison security, and that the limitation is no greater than necessary to ensure prison security. In reviewing each piece of mail, prison officials found that George Jackson and the NARN were invoked in a context that promoted gang activity. The mail stopped on March 1, 2007, quoted George Jackson and indirectly referenced the BGF and BGF members at PBSP. The mail stopped on February 17, 2009, contained information referencing NARN, which has been determined by prison officials to disguise the activities of the BGF. In addition, the mail was addressed to Anthony Rayson, who has previously published gang-related materials for BGF members housed at PBSP-SHU. Rayson is also affiliated with the Anarchist Black Cross, a organization which advocates being "militantly organized" and seeks abolition of prisons. Similarly, the mail confiscated on March 12, 2009, also contained information regarding NARN and was addressed to Rayson. Finally, prison officials point out that Harrison is seeking to publish his writings through Rayson and his affiliated publishing company, which is consistent with BGF's known method of operation: publishing materials through "people in the community . . . under the direction and control of BGF members." [Citation omitted.]
>
> Defendants have not confiscated Harrison's mail because of the references to NARN or George Jackson; rather they have carefully reviewed his mail and the relevant context to ensure that the confiscation was necessary to ensure prison security. See, e.g., Procunier, 416 U.S. at 415 (disapproving regulation which not "narrowly drawn to reach only material that might be thought to encourage violence). Defendants have proven that the confiscation of Harrison's outgoing mail furthered the important government interest of ensuring prison security.

Doc. #20 at 21:11-22:4.

In sum, Judge Seeborg's ruling in the Harvey case, which is based on different facts and evidence than presented in this case, does not compel a different ruling from this Court with respect to the confiscation of Harrison's outgoing mail.

## CONCLUSION

For the foregoing reasons, defendants second motion for summary judgment is GRANTED. Defendants are entitled to judgment as a matter of law on all claims raised by

16

plaintiff Marcus L. Harrison's complaint.

The Clerk shall terminate all pending motions as decided by this order and judgment shall be entered in favor of all defendants.

IT IS SO ORDERED.

Dated: March 8, 2013

_____
SUSAN ILLSTON
United States District Judge